Alfonso LOPEZ–GOMEZ, Plaintiff,

v.

JIM'S PLACE, LLC and Costa
B. Taras, Defendants.

No. 14–2309–JPM–tmp.

United States District Court,
W.D. Tennessee,
Western Division.

Signed Nov. 20, 2014.

Janelle Crandall Osowski, William B. Ryan, Bryce William Ashby, Donati Law Firm, LLP, Memphis, TN, for Plaintiff.

Thomas D. Yeaglin, Law Office of Thomas Yeaglin, Memphis, TN, for Defendants.

## ORDER DENYING DEFENDANTS' SECOND MOTION TO COMPEL DISCOVERY

TU M. PHAM, United States Magistrate Judge.

Before the court by order of reference is defendants Jim's Place, LLC and Costa B. Taras's (collectively, "Defendants") Second Motion to Compel Discovery, filed on October 16, 2014. (ECF No. 42.) Plaintiff Alfonso Lopez–Gomez ("Plaintiff") filed his response in opposition on October 29, 2014. (ECF No. 48.) For the reasons below, the motion is DENIED.

On August 28, 2014, Plaintiff served Defendants with a Notice to Take the Deposition of defendant Costa B. Taras. By agreement of the parties, the deposition was scheduled for October 2, 2014, at 9:30 a.m. In the motion, Defendants' counsel (Mr. Thomas D. Yeaglin) states he informed Plaintiff's counsel (Mr. Bryce W. Ashby) that he wanted to take the deposition of Plaintiff immediately following the deposition of Mr. Taras on October 2. Mr. Yeaglin states "that request was agreed to by Plaintiff's counsel. Letters were exchanged but nothing was changed concerning the taking of these two depositions beginning at 9:30 a.m. [on October 2]." (ECF No. 42 at 2.) Mr. Yeaglin claims that "Plaintiff's counsel did state in a letter that defense counsel would, in the opinion of Plaintiff's counsel, need to bring an interpreter with him to the Plaintiff's deposition." (*Id.*) However, Mr. Yeaglin states that he subsequently spoke with certain co-workers of the Plaintiff at Jim's Place, LLC, and at another restaurant where Plaintiff used to Work, Chili's, to inquire as to whether or not they could converse with Plaintiff in English. Each person told Mr. Yeaglin that they could "certainly understand the Plaintiff and that the Plaintiff could understand them in their

daily conversations with him." (*Id.*) Mr. Yeaglin further states in the motion that "Plaintiff was a cook at both restaurants [Jim's Place and Chili's] and so one should imagine what meals would be like if a Spanish speaking only cook could not communicate with the unanimously non-Spanish speaking order taking servers." (*Id.*) Based on his investigation, Mr. Yeaglin made the decision not to hire an interpreter for Plaintiff's deposition. On October 2, the parties appeared for the Plaintiff's deposition as scheduled. However, Mr. Ashby stated that he would not allow Plaintiff to be deposed without a Spanish-speaking interpreter. As a result, Plaintiff was not deposed. Defendants ask the court to order the Plaintiff to appear for his deposition at a time, date, and location designated by Mr. Yeaglin, and order Plaintiff to reimburse Defendants for attorney's fees and court reporter fees as a sanction for refusing to be deposed as scheduled on October 2.

In his response, Mr. Ashby states that as early as September 17, 2014, he notified Mr. Yeaglin in an email that the Defendants "will need to arrange for a Spanish interpreter for Mr. Lopez–Gomez's deposition." (ECF No. 48–3, 9/17/2014 email from Mr. Ashby.) On September 26, 2014, Mr. Ashby sent Mr. Yeaglin another email stating that "Mr. Lopez–Gomez's deposition will necessitate an interpreter. . . ." According to Mr. Ashby, Mr. Yeaglin never responded to the statement regarding Plaintiff's· need for an interpreter. Mr. Yeaglin did not raise any concerns about

an interpreter until October 1, 2014, when the undersigned Magistrate Judge conducted a telephone hearing with the parties on an unrelated motion to compel filed by Defendants.[1] ·In his response, Mr. Ashby attached a declaration written in Spanish and signed by Plaintiff (along with a version translated into English), in which Plaintiff states as follows:

3. Since childhood, I have lived with Spanish speaking relatives and friends. I grew up in a house in which we only spoke Spanish. Currently, Spanish is the language that is spoken in my house, when I watch TV and listen to the radio, both are in Spanish as this is my native and primary language.

4. I did not speak any English until I was 28 years old. I have never had any formal education, classes or training in English. Everything that I have learned has been through informal conversations while at work because of words I picked up here and there and so throughout the years I have been able to form small work-related conversations.

5. My level of English is very basic because I just basically use it to get by or when I go to a store. I am not able to write except for the very basic information like an address, but nothing more than that. I am able to slowly read and comprehend some of the things that I read, like a basic written letter or book, I do not feel I would understand something like a court or legal document. Verbally, informal conversations can communicate but even then I feel as

---

1. Mr. Yeaglin only briefly raised the issue at the beginning of the hearing and did not seek a ruling from the court about whether or not an interpreter had to be provided. The issue was raised by Mr. Yeaglin only in the context of challenging the credibility of Plaintiff, specifically, to support his argument that he should be entitled to obtain discovery about Plaintiff's identity and immigration status be-

cause Plaintiff lacked credibility about his ability to speak English. In response, Mr. Ashby stated that Plaintiff was only able to · speak "some English" and that he had informed Mr. Yeaglin that Plaintiff would need an interpreter for his deposition. Neither Mr. Yeaglin nor Mr. Ashby raised this issue again during the remainder of the motion hearing.

though I cannot fully convey what I am trying to say.

6. I would not feel comfortable understanding questions or answering questions under oath in English as I could not be sure that I fully understand the question being asked and I would not be confident that I was fully articulating my answer.

(ECF No. 48–5.) Plaintiff seeks sanctions against the Defendants because "it is clear that Defendants sought to annoy, harass, embarrass and oppress Plaintiff by asking him to testify outside of his native language." (ECF No. 48 at 5.)

In *East Boston Ecumenical Community Council, Inc. v. Mastrorillo,* 124 F.R.D. 14 (D.Mass.1989), the court considered a similar issue. There, the defendants sought to take the depositions of some of the plaintiffs, and plaintiffs' counsel asserted that the plaintiffs could not speak English and would require an interpreter. *Id.* at 15. Defendants doubted plaintiffs' claim that their proficiency in English was so lacking that they could not be deposed without an interpreter. *Id.* Defendants also argued that if plaintiffs insisted on having an interpreter at their depositions, then plaintiffs should bear those costs. *Id.* The court, relying on the First Circuit's decision in *In re Puerto Rico Electric Power Authority,* 687 F.2d 501 (1st Cir.1982), ruled as follows:

.... In this case, it is the defendants who are seeking discovery. If the deponents are unable to speak English, the defendants must bear the cost of having their questions translated into the native language of the deponents and having the deponents' answers translated into English. If the defendants prevail on the merits, the costs incurred for the interpreters may be taxed in defendants' favor against the plaintiffs. 28 U.S.C. § 1920(6).

The only caveat is that if defendants can demonstrate that the deponents do not really need interpreters and that the defendants were forced to incur the costs of interpreters needlessly, I have no doubt that the Court would have the power to require the plaintiffs to pay the costs of an interpreter regardless of which parties ultimately prevail in the litigation. However, on the present record, there is insufficient basis for concluding that interpreters are not needed for the depositions.

*Id.; see also Heatherly v. Portillo's Hot Dogs, Inc.,* No. 11 C 8480, 2013 WL 5951758, at *2 (N.D.Ill. Nov. 7, 2013) (finding that defendant, as the prevailing party, was entitled to award of costs for depositions that required Spanish interpreters); *Gutierrez v. P.A.L., Ltd.,* No. 10 C 4152, 2012 WL 2993896, at *3 (N.D.Ill. July 20, 2012) (same); *Rodriguez v. Marble Care Int'l,* 862 F.Supp.2d 1316, 1321 (S.D.Fla. 2012) (adopting report and recommendation that awarded costs to defendants for Spanish interpreters used during plaintiffs' depositions); *Granjas Aquanova S.A. de C.V. v. House Mfg. Co., Inc.,* No. 3:07–CV–00168, 2010 WL 4809342, at *4 (E.D.Ark. Nov. 19, 2010) (finding that prevailing party was entitled to $600.00 for Spanish interpreters used during deposition); *Dahn World Co., Ltd. v. Chung,* No. RWT 06–2170, 2009 WL 277603, at *3 (D.Md. Feb. 5, 2009) (stating that "[w]hen a party requests an interpreter for a deposition, the cost for the service is borne by the party seeking the deposition" and that the prevailing party may recover interpreter costs pursuant to 28 U.S.C. § 1920).

In the present case, Plaintiff has filed a sworn declaration that sufficiently supports his claim that his understanding of the English language is limited and that he needs a Spanish-speaking interpreter for his deposition. *See Dahn World,* 2009 WL

277603, at *3 (stating that even though defendant Chung could speak English and earned multiple degrees from universities in the United States, Chung was entitled to award for interpreter costs because "it [was] not unreasonable or unexpected that Chung would require the assistance of an interpreter to ensure that she understood the questions she would be asked during her deposition"). Therefore, the Defendants' Second Motion to Compel Discovery is DENIED. The Defendants shall be responsible for providing a certified Spanish interpreter at Plaintiff's deposition and paying for those services. To the extent Plaintiff seeks sanctions against Defendants, the court finds no basis to impose sanctions against Defendants, and thus Plaintiff's cross-motion for sanctions is DENIED.

IT IS SO ORDERED.